IRELL & MANELLA LLP
John C. Hueston (164921)
*jhueston@irell.com*
Carlos R. Moreno (66912)
*cmoreno@irell.com*
Bruce A. Wessel (116734)
*bwessel@irell.com*
1800 Avenue of the Stars, Suite 900
Los Angeles, California 9067
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

Attorneys for Plaintiff William Cramer

FILED

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

2012 APR 10  PM 3: 26

BY: _____

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

## CV 12 - 03130  JFW (JEMx)

| | |
|---|---|
| WILLIAM CRAMER, an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | **DEMAND FOR JURY TRIAL** |
| EDMUND G. BROWN, JR., in his official capacity as Governor of California; KAMALA HARRIS, in her official capacity as Attorney General of California, | |
| Defendants. | |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214

1       Plaintiff William Cramer ("Plaintiff") alleges, on personal knowledge as to

2  himself and on information and belief as to others:

3                          **INTRODUCTION**

4      1.    In November 2008, California voters approved Proposition 2 ("Prop

5  2").  Prop 2 is codified at California Health and Safety Code §§ 25990 – 25994 and

6  its provisions are scheduled to go into effect January 1, 2015.  Prop 2 will make it a

7  crime in California, punishable by imprisonment of up to 180 days, to confine an

8  egg-laying hen in a manner that prevents the hen from "lying down, standing up,

9  and fully extending . . . her limbs" and "turning around freely."  Prop 2 is

10  unconstitutionally vague and, therefore, violates the Due Process Clause of the

11  United States Constitution.   This court has subject matter jurisdiction pursuant to 28

12  U.S.C. § 1331.

13      2.    Because of the vagueness of Prop 2, California egg farmers lack

14  sufficient notice of how to avoid violating the statute.  Fearing arbitrary

15  prosecutions and the potential for imprisonment, farmers will shut down their egg

16  farms in California before January 1, 2015.  Some farmers will exit the egg business

17  altogether while others will move out of state.  The uncertainty caused by Prop 2 is

18  already shrinking the investment in new facilities and new egg farms in California.

19  As flocks of egg-laying hens mature, egg farms in California will close.  The fair

20  market value of egg farms has been reduced.

21      3.    Additionally, Prop 2 unduly burdens interstate commerce while

22  providing minimal or no local benefits and, therefore, it violates the Commerce

23  Clause of the United States Constitution.

24      4.    By this complaint, Plaintiff challenges the constitutionality of Prop 2.

25  Plaintiff seeks a declaration that Prop 2 is unconstitutional and an injunction

26  prohibiting its enforcement.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214

- 1 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## **PARTIES**

5.     Through a family trust of which he is a trustee, Plaintiff William Cramer owns farms in Riverside County, California that house egg-laying hens. Plaintiff has operated these farms for over 50 years.  These farms produce eggs that are sold to distributors who in turn sell the eggs for retail sale both in California and outside of California.

6.     Plaintiff's farms are run by employees who have worked for him for many years, some for decades.  The thousands of egg-laying hens on Plaintiff's farms are housed in cages that are commonly known as modern cage systems. While the egg-laying hens in these cages can move around – for example eating feed distributed on one side of the cage and drinking water from the other side of the cage – Plaintiff is informed and believes that the proponents of Prop 2 would contend that the cages currently in use by Plaintiff, and by other California farmers as well, are too small to comply with Prop 2.  Because of the vague language of Prop 2, Plaintiff has no way knowing what size cages will be considered compliant with Prop 2 by law enforcement officials and others.

7.     Defendant Edmund G. Brown is the Governor of the State of California.

8.     Defendant Kamala Harris is the Attorney General of the State of California.  In her official capacity, the Attorney General is the chief legal officer of the State of California.

9.     Defendants, as well as county district attorneys, are responsible for the enforcement of Prop 2.

10.    The relief requested in this action is sought against each Defendant in his or her official capacity and against each Defendant's officers, employees, and agents, including county district attorneys.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2510214

- 2 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## JURISDICTION AND VENUE

11.    This case arises under the Constitution of the United States and 42 U.S.C. § 1983.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

12.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of this action is situated in this district, Plaintiff faces potential injury within this district, a substantial part of the events giving rise to the claim occurred in this district, and all Defendants reside in the State of California.

## FACTS

### A.    The Egg Market in the U.S. and California

13.    California is the fifth largest egg producing state in the nation.  With annual production of approximately five billion eggs, California supplies about six percent of the eggs consumed in the United States.  The California egg industry has a statewide economic output of over $650 million and employs approximately 4,000 Californians.

14.    Egg-laying hens in California are fed corn-based feed.  The corn for this feed is grown in California and in states such as Kansas or Nebraska.  It is shipped to California farms by truck or rail.

15.    Over ninety percent of the eggs produced in the United States come from hens housed in modern cage systems.  Plaintiff is informed and believes that the proponents of Prop 2 would contend that modern cage systems, such as the ones used on Plaintiff's farms, are too small and do not comply with Prop 2.

16.    Less than ten percent of the eggs produced in the United States come from farms with so-called cage-free systems.

17.    It is more expensive to operate farms with cage-free systems.  As a result, cage-free eggs are more expensive than eggs produced on farms with modern cage systems.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214

- 3 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**B.**     **California Health and Safety Code**

18.     On April 9, 2008, the California Secretary of State certified Prop 2 for inclusion on the November 4, 2008 ballot.  The measure passed.  Prop 2's effective date is January 1, 2015.  There is no provision in Prop 2 that permits amendment by the Legislature without voter approval and, therefore, pursuant to article II, section 10, subdivision (c) of the California Constitution, the Legislature cannot amend Prop 2 on its own but can seek voter approval of amendments.

19.     Entitled "Standards for Confining Farm Animals," Prop 2 added Sections 25990 – 25994 to the California Health and Safety Code, making the following activity punishable as a misdemeanor in California:  "a person shall not tether or confine any covered animal [including egg-laying hens], on a farm, for all or the majority of any day, in a manner that prevents such animal from:  (a) lying down, standing up, and fully extending his or her limbs; and (b) turning around freely."  Cal. Health & Safety Code § 25990.

20.     "Fully extending his or her limbs" is defined as "fully extending all limbs without touching the side of an enclosure, including, in the case of egg-laying hens, fully spreading both wings without touching the side of an enclosure or other egg-laying hens."  Cal. Health & Safety Code § 25991(f).

**C.**     **The Proposed Federal Legislation**

21.     On January 23, 2012, H.R. 3798, the Egg Products Inspection Act Amendments of 2012 (the "H.R. 3798"), was introduced.  A true and correct copy of H.R. 3798 is attached as Exhibit A.  With respect to cage size, this proposed legislation identifies a minimum number of "square inches of individual floor space" per hen, calculated by dividing total floor space by total number of egg-laying hens.  Exhibit A at Sec. 2 (Hen Housing and Treatment Standards).  This proposed federal statute is not vague.  H.R. 3798, if enacted into law as currently drafted, would preempt Prop 2 by prohibiting "minimum floor space allotments . . . for egg-laying

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2510214

- 4 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  hens . . . which are in addition to or different than those made under this [Act]."

2  Exhibit A at Sec. 4 (State and Local Authority).

3  ### FIRST CLAIM FOR RELIEF

4  #### Violation of Due Process

5  22.    Plaintiff incorporates by reference paragraphs 1-21 as if set forth in

6  full.

7  23.    Prop 2 is void-for-vagueness and is unconstitutional.  It denies the

8  people of California due process because it does not provide fair notice of unlawful

9  criminal conduct, and further because, as prosecutors throughout the state exercise

10  prosecutorial discretion, enforcement of the statute will be arbitrary and

11  inconsistent.  Arbitrary enforcement of Prop 2 is of particular concern because Prop

12  2 was passed by the voters and elected district attorneys might be pressured to

13  expansively interpret its reach.

14  24.    Plaintiff, and other similarly situated farmers in California, will have a

15  legitimate and reasonable fear of prosecution when Prop 2 goes into effect.  Rather

16  than risk prosecution, Plaintiff will likely shut down his farms before the effective

17  date of Prop 2, and others will likely do the same.  The lead time to build new

18  facilities is measured in years and further investment in California, given the

19  uncertainty caused by Prop 2, is not economically viable.  Further financing of new

20  facilities is difficult given the concern of lenders that new facilities would not be

21  compliant with Prop 2.  The uncertainty caused by Prop 2 as its effective date

22  approaches will cause substantial additional  harm to Plaintiff and his employees,

23  suppliers, and customers, as well as the owners, employees, suppliers, and

24  customers of other farms.  California consumers will also suffer substantial harm

25  due to an expected increase in the retail price of eggs and a reduced supply of fresh

26  eggs in California.  Laws pertaining to cage size in Europe are currently causing

27  price increases and shortages of eggs there.  *See, e.g.,* "Shortage Scrambles Eastern

28  Europe's Egg Hunt," *Wall Street Journal*, April 4, 2012 ("On average, consumers

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214

- 5 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   across the EU had to pay 76.5% more for eggs at the end of March, compared with a

2   year earlier, according to EU figures.")

### SECOND CLAIM FOR RELIEF

#### Violation of the Commerce Clause

5       25.    Plaintiff incorporates by reference paragraphs 1-24 as if set forth in

6   full.

7       26.    Prop 2 violates the Commerce Clause of the United States Constitution.

8       27.    The Commerce Clause restricts states from burdening interstate

9   commerce where the burden imposed on such commerce is clearly excessive in

10  relation to the putative local benefits.

11      28.    Prop 2 provides little or no local benefits.  Many California egg

12  producers will shut down or relocate their operations to other states.  Egg-laying

13  hens will remain confined in modern cage systems, but in different states.

14      29.    Prop 2 greatly burdens interstate commerce:  First, when California egg

15  farmers shut down their operations, billions of eggs in the national supply chain will

16  be affected.  Relocation of large farms will be expensive, and that cost will be borne

17  by egg consumers.  Second, due to the elimination of California-based producers,

18  shipping and transportation costs will increase.  These increased costs will be passed

19  on to consumers in the form of higher prices.  Third, the potential unemployment of

20  approximately 4,000 people in California and the relocation of a $650 million

21  industry will disrupt regional and interstate commerce.  Fourth, the national feed

22  corn market and associated transportation industries will be affected and disrupted.

### PRAYER FOR RELIEF

25      **WHEREFORE,** Plaintiff respectfully prays that this Court:

27  1. Pursuant to 28 U.S.C. § 2201, declare that Proposition 2, codified at

28      California Health and Safety Code §§ 25990 – 25994, is unconstitutional;

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214

- 6 -

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2. Enter preliminary and permanent injunctive relief prohibiting the enforcement of California Health and Safety Code §§ 25990 – 25994;

3. Award reasonable attorneys' fees and costs to the extent permitted by applicable law, including 42 U.S.C. § 1988; and

4. Award such additional and further relief as the Court finds just and proper.

Dated:  April 10, 2012

IRELL & MANELLA LLP
John C. Hueston
Carlos R. Moreno
Bruce A. Wessel

Bruce A. Wessel
Attorneys for Plaintiff

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

## DEMAND FOR JURY TRIAL

2        Plaintiff hereby requests a trial by jury.

3

4   Dated:  April 10, 2012                    IRELL & MANELLA LLP
                                             John C. Hueston
5                                            Carlos R. Moreno
                                             Bruce A. Wessel
6

7

8                                            Bruce A. Wessel
                                             Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2510214                          - 8 -
                  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT A



I

112TH CONGRESS
2D SESSION

# H. R. 3798

To provide for a uniform national standard for the housing and treatment
of egg-laying hens, and for other purposes.

---

## IN THE HOUSE OF REPRESENTATIVES

JANUARY 23, 2012

Mr. SCHRADER (for himself, Mr. GALLEGLY, Mr. FARR, and Mr. DENHAM)
introduced the following bill; which was referred to the Committee on Ag-
riculture

---

# A BILL

To provide for a uniform national standard for the housing
and treatment of egg-laying hens, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the ''Egg Products Inspec-

5  tion Act Amendments of 2012''.

6  **SEC. 2. HEN HOUSING AND TREATMENT STANDARDS.**

7    (a) DEFINITIONS.—Section 4 of the Egg Products

8  Inspection Act (21 U.S.C. 1033) is amended—

9        (1) by redesignating subsection (a) as sub-

10      section (c);

EXHIBIT A

2

1 (2) by redesignating subsections (b), (c), (d),

2 (e), (f), and (g) as subsections (f), (g), (h), (i), (j),

3 and (k), respectively;

4 (3) by redesignating subsections (h) and (i) as

5 subsections (n) and (o), respectively;

6 (4) by redesignating subsections (j), (k), and (l)

7 as subsections (r), (s), and (t), respectively;

8 (5) by redesignating subsections (m), (n), (o),

9 (p), (q), (r), (s), (t), (u), (v), (w), (x), (y), and (z)

10 as subsections (v), (w), (x), (y), (z), (aa), (bb), (cc),

11 (dd), (ee), (ff), (gg), (hh), and (ii), respectively;

12 (6) by inserting before subsection (c), as redes-

13 ignated by paragraph (1), the following new sub-

14 sections:

15 "(a) The term 'adequate environmental enrichments'

16 means adequate perch space, dust bathing or scratching

17 areas, and nest space, as defined by the Secretary of Agri-

18 culture, based on the best available science, including the

19 most recent studies available at the time that the Sec-

20 retary defines the term. The Secretary shall issue regula-

21 tions defining this term not later than January 1, 2017,

22 and the final regulations shall go into effect on December

23 31, 2018.

24 "(b) The term 'adequate housing-related labeling'

25 means a conspicuous, legible marking on the front or top

3

1   of a package of eggs accurately indicating the type of

2   housing that the egg-laying hens were provided during egg

3   production, in one of the following formats:

4       "(1) 'Eggs from free-range hens' to indicate

5       that the egg-laying hens from which the eggs or egg

6       products were derived were, during egg production—

7           "(A) not housed in caging devices; and

8           "(B) provided with outdoor access.

9       "(2) 'Eggs from cage-free hens' to indicate that

10      the egg-laying hens from which the eggs or egg

11      products were derived were, during egg production,

12      not housed in caging devices.

13      "(3) 'Eggs from enriched cages' to indicate that

14      the egg-laying hens from which the eggs or egg

15      products were derived were, during egg production,

16      housed in caging devices that—

17          "(A) contain adequate environmental en-

18          richments; and

19          "(B) provide the hens a minimum of 116

20          square inches of individual floor space per

21          brown hen and 101 square inches of individual

22          floor space per white hen.

23      "(4) 'Eggs from caged hens' to indicate that

24      the egg-laying hens from which the eggs or egg

4

1  products were derived were, during egg production,

2  housed in caging devices that either—

3      "(A) do not contain adequate environ-

4      mental enrichments; or

5      "(B) do not provide the hens a minimum

6      of 116 square inches of individual floor space

7      per brown hen and 101 square inches of indi-

8      vidual floor space per white hen.";

9      (7) by inserting after subsection (c), as redesig-

10     nated by paragraph (1), the following new sub-

11     sections:

12  "(d) The term 'brown hen' means a brown egg-laying

13  hen used for commercial egg production.

14  "(e) The term 'caging device' means any cage, enclo-

15  sure, or other device used for the housing of egg-laying

16  hens for the production of eggs in commerce, but does not

17  include an open barn or other fixed structure without in-

18  ternal caging devices.";

19     (8) by inserting after subsection (k), as redesig-

20     nated by paragraph (2), the following new sub-

21     sections:

22  "(l) The term 'egg-laying hen' means any female do-

23  mesticated chicken, including white hens and brown hens,

24  used for the commercial production of eggs for human

25  consumption.

•HR 3798 IH

5

1    "(m) The term 'existing caging device' means any

2    caging device that was continuously in use for the produc-

3    tion of eggs in commerce up through and including De-

4    cember 31, 2011.";

5          (9) by inserting after subsection (o), as redesig-

6          nated by paragraph (3), the following new sub-

7          sections:

8    "(p) The term 'feed-withdrawal molting' means the

9    practice of preventing food intake for the purpose of in-

10   ducing egg-laying hens to molt.

11   "(q) The term 'individual floor space' means the

12   amount of total floor space in a caging device available

13   to each egg-laying hen in the device, which is calculated

14   by measuring the total floor space of the caging device

15   and dividing by the total number of egg-laying hens in

16   the device.";

17         (10) by inserting after subsection (t), as redes-

18         ignated by paragraph (4), the following new sub-

19         section:

20   "(u) The term 'new caging device' means any caging

21   device that was not continuously in use for the production

22   of eggs in commerce on or before December 31, 2011.";

23   and

24         (11) by inserting at the end the following new

25         subsections:

6

1    ''(jj) The term 'water-withdrawal molting' means the

2    practice of preventing water intake for the purpose of in-

3    ducing egg-laying hens to molt.

4    ''(kk) The term 'white hen' means a white egg-laying

5    hen used for commercial egg production.''.

6    (b) HOUSING AND TREATMENT OF EGG-LAYING

7    HENS.—The Egg Products Inspection Act (21 U.S.C.

8    1031 et seq.) is amended by inserting after section 7 the

9    following new sections:

10   **''§ 7A. Housing and treatment of egg-laying hens**

11   ''(a) ENVIRONMENTAL ENRICHMENTS.—

12       ''(1) EXISTING CAGING DEVICES.—All existing

13   caging devices must provide egg-laying hens housed

14   therein, beginning 15 years after the date of enact-

15   ment of the Egg Products Inspection Act Amend-

16   ments of 2012, adequate environmental enrichments.

17       ''(2) NEW CAGING DEVICES.—All new caging

18   devices must provide egg-laying hens housed therein,

19   beginning nine years after the date of enactment of

20   the Egg Products Inspection Act Amendments of

21   2012, adequate environmental enrichments.

22       ''(3) CAGING DEVICES IN CALIFORNIA.—All

23   caging devices in California must provide egg-laying

24   hens housed therein, beginning December 31, 2018,

25   adequate environmental enrichments.

7

1    "(b) FLOOR SPACE.—

2    "(1) EXISTING CAGING DEVICES.—All existing

3    cages devices must provide egg-laying hens housed

4    therein—

5         "(A) beginning four years after the date of

6         enactment of the Egg Products Inspection Act

7         Amendments of 2012 and until the date that is

8         15 years after the date of enactment of the Egg

9         Products Inspection Act Amendments of 2012,

10        a minimum of 76 square inches of individual

11        floor space per brown hen and 67 square inches

12        of individual floor space per white hen; and

13        "(B) beginning 15 years after the date of

14        enactment of the Egg Products Inspection Act

15        Amendments of 2012, a minimum of 144

16        square inches of individual floor space per

17        brown hen and 124 square inches of individual

18        floor space per white hen.

19    "(2) NEW CAGING DEVICES.—Except as pro-

20    vided in paragraph (3), all new caging devices must

21    provide egg-laying hens housed therein—

22        "(A) beginning three years after the date

23        of enactment of the Egg Products Inspection

24        Act Amendments of 2012 and until the date

25        that is six years after the date of enactment of

8

1    the Egg Products Inspection Act Amendments

2    of 2012, a minimum of 90 square inches of in-

3    dividual floor space per brown hen and 78

4    square inches of individual floor space per white

5    hen;

6          "(B) beginning six years after the date of

7    enactment of the Egg Products Inspection Act

8    Amendments of 2012 and until the date that is

9    nine years after the date of enactment of the

10   Egg Products Inspection Act Amendments of

11   2012, a minimum of 102 square inches of indi-

12   vidual floor space per brown hen and 90 square

13   inches of individual floor space per white hen;

14         "(C) beginning nine years after the date of

15   enactment of the Egg Products Inspection Act

16   Amendments of 2012 and until the date that is

17   12 years after the date of enactment of the Egg

18   Products Inspection Act Amendments of 2012,

19   a minimum of 116 square inches of individual

20   floor space per brown hen and 101 square

21   inches of individual floor space per white hen;

22         "(D) beginning 12 years after the date of

23   enactment of the Egg Products Inspection Act

24   Amendments of 2012 and until the date that is

25   15 years after the date of enactment of the Egg

•HR 3798 IH

9

1    Products Inspection Act Amendments of 2012,

2    a minimum of 130 square inches of individual

3    floor space per brown hen and 113 square

4    inches of individual floor space per white hen;

5    and

6        "(E) beginning 15 years after the date of

7    enactment of the Egg Products Inspection Act

8    Amendments of 2012, a minimum of 144

9    square inches of individual floor space per

10   brown hen and 124 square inches of individual

11   floor space per white hen.

12   "(3) CALIFORNIA CAGING DEVICES.—All caging

13   devices in California must provide egg-laying hens

14   housed therein—

15       "(A) beginning January 1, 2015, and

16   through December 31, 2020, a minimum of 134

17   square inches of individual floor space per

18   brown hen and 116 square inches of individual

19   floor space per white hen; and

20       "(B) beginning January 1, 2021, a min-

21   imum of 144 square inches of individual floor

22   space per brown hen and 124 square inches of

23   individual floor space per white hen.

24   "(c) AIR QUALITY.—Beginning two years after the

25   date of enactment of the Egg Products Inspection Act

10

1  Amendments of 2012, an egg handler shall provide all egg-
2  laying hens under his ownership or control with acceptable
3  air quality, which does not exceed more than 25 parts per
4  million of ammonia during normal operations.

5  "(d) FORCED MOLTING.—Beginning two years after
6  the date of enactment of the Egg Products Inspection Act
7  Amendments of 2012, no egg handler may subject any
8  egg-laying hen under his ownership or control to feed-
9  withdrawal or water-withdrawal molting.

10  "(e) EUTHANASIA.—Beginning two years after the
11  date of enactment of the Egg Products Inspection Act
12  Amendments of 2012, an egg handler shall provide, when
13  necessary, all egg-laying hens under his ownership or con-
14  trol with euthanasia that is humane and uses a method
15  deemed 'Acceptable' by the American Veterinary Medical
16  Association.

17  "(f) PROHIBITION ON NEW UNENRICHABLE
18  CAGES.—No person shall build, construct, implement, or
19  place into operation any new caging device for the produc-
20  tion of eggs to be sold in commerce unless the device—

21       "(1) provides the egg-laying hens to be con-
22       tained therein a minimum of 76 square inches of in-
23       dividual floor space per brown hen or 67 square
24       inches of individual floor space per white hen; and

11

1       "(2) is capable of being adapted to accommo-

2       date adequate environmental enrichments.

3       "(g) EXEMPTIONS.—

4       "(1) RECENTLY-INSTALLED EXISTING CAGING

5       DEVICES.—The requirements contained in sub-

6       sections (a)(1) and (b)(1)(B) shall not apply to any

7       existing caging device that was first placed into op-

8       eration between January 1, 2008, and December 31,

9       2011. This exemption shall expire 18 years after the

10      date of enactment of the Egg Products Inspection

11      Act Amendments of 2012, at which time the require-

12      ments contained in subsections (a)(1) and (b)(1)(B)

13      shall apply to all existing caging devices.

14      "(2) HENS ALREADY IN PRODUCTION.—The re-

15      quirements contained in subsections (a)(1), (a)(2),

16      (b)(1)(B), and (b)(2) shall not apply to any caging

17      device containing egg-laying hens who are already in

18      egg production on the date that such requirement

19      takes effect. This exemption shall expire on the date

20      that such egg-laying hens are removed from egg pro-

21      duction.

22      "(3) SMALL PRODUCERS.—Nothing contained

23      in this section shall apply to an egg handler who

24      buys, sells, handles, or processes eggs or egg prod-

12

1    ucts solely from one flock of not more than 3,000

2    egg-laying hens.

**3  "§ 7B. Phase-in conversion requirements**

4    "(a) FIRST CONVERSION PHASE.—As of six years

5  after the date of enactment of the Egg Products Inspec-

6  tion Act Amendments of 2012, at least 25 percent of the

7  egg-laying hens in commercial egg production shall be

8  housed either in new caging devices or in existing caging

9  devices that provide the hens contained therein with a

10  minimum of 102 square inches of individual floor space

11  per brown hen and 90 square inches of individual floor

12  space per white hen.

13    "(b) SECOND CONVERSION PHASE.—As of 12 years

14  after the date of enactment of the Egg Products Inspec-

15  tion Act Amendments of 2012, at least 55 percent of the

16  egg-laying hens in commercial egg production shall be

17  housed either in new caging devices or in existing caging

18  devices that provide the hens contained therein with a

19  minimum of 130 square inches of individual floor space

20  per brown hen and 113 square inches of individual floor

21  space per white hen.

22    "(c) FINAL CONVERSION PHASE.—As of December

23  31, 2029, all egg-laying hens confined in caging devices

24  shall be provided adequate environmental enrichments and

25  a minimum of 144 square inches of individual floor space

13

1   per brown hen and 124 square inches of individual floor

2   space per white hen.

3       "(d) COMPLIANCE.—

4           "(1) At the end of six years after the date of

5       enactment of the Egg Products Inspection Act

6       Amendments of 2012, the Secretary shall determine,

7       after having reviewed and analyzed the results of an

8       independent, national survey of caging devices con-

9       ducted in 2018, whether the requirements of sub-

10       section (a) have been met. If the Secretary finds

11       that the requirements of subsection (a) have not

12       been met, then beginning January 1, 2020, the floor

13       space requirements (irrespective of the date such re-

14       quirements expire) related to new caging devices

15       contained in subsection (b)(2)(B) of section 7A shall

16       apply to existing caging devices placed into operation

17       prior to January 1, 1995.

18           "(2) At the end of 12 years after the date of

19       enactment of the Egg Products Inspection Act

20       Amendments of 2012, and again after December 31,

21       2029, the Secretary shall submit to the Committee

22       on Agriculture of the House of Representatives and

23       the Committee on Agriculture, Nutrition, and For-

24       estry of the Senate a report on compliance with sub-

25       sections (b) and (c).

14

1       "(3) Notwithstanding section 12, the remedies

2     provided in this subsection shall be the exclusive

3     remedies for violations of this section.".

4     (c) INSPECTIONS.—Section 5 of the Egg Products In-

5 spection Act (21 U.S.C. 1034) is amended—

6         (1) in subsection (d), by inserting "(other than

7     requirements with respect to housing, treatment,

8     and house-related labeling)" after "as he deems ap-

9     propriate to assure compliance with such require-

10     ments"; and

11         (2) in subsection (e)—

12            (A) in paragraph (1)—

13                (i) in subparagraph (A), by striking

14         "and";

15                (ii) by redesignating subparagraph

16         (B) as subparagraph (C);

17                (iii) by inserting after subparagraph

18         (A) the following new subparagraph:

19         "(B) are derived from egg-laying hens

20     housed and treated in compliance with section

21     7A; and"; and

22                (iv) in subparagraph (C), as redesig-

23         nated by clause (ii), by inserting "adequate

24         housing-related labeling and" after "con-

25         tain";

15

1          (B) in paragraph (2), by striking "In the
2     case of a shell egg packer" and inserting "In
3     the cases of an egg handler with a flock of more
4     than 3,000 egg-laying hens and a shell egg
5     packer";

6          (C) in paragraph (3), by inserting "(other
7     than requirements with respect to housing,
8     treatment, and housing-related labeling)" after
9     "to ensure compliance with the requirements of
10    paragraph (1)"; and

11         (D) in paragraph (4), by striking "with a
12    flock of not more than 3,000 layers." and in-
13    serting "who buys, sells, handles, or processes
14    eggs or egg products solely from one flock of
15    not more than 3,000 egg-laying hens.".

16    (d) LABELING.—Section 7 of the Egg Products In-
17 spection Act of 1970 (21 U.S.C. 1036) is amended in sub-
18 section (a) by inserting "adequate housing-related label-
19 ing," after "plant where the products were processed,".

20    (e) LIMITATION ON EXEMPTIONS BY SECRETARY.—
21 Section 15 of the Egg Products Inspection Act of 1970
22 (21 U.S.C. 1044) is amended in subsection (a) by insert-
23 ing ", not including subsection (c) of section 8," after "ex-
24 empt from specific provisions".

16

1    (f) IMPORTS.—Section 17 of the Egg Products In-

2  spection Act of 1970 (21 U.S.C. 1046) is amended in

3  paragraph (2) of subsection (a) by striking "subdivision

4  thereof and are labeled and packaged" and inserting "sub-

5  division thereof; and no eggs or egg products capable of

6  use as human food shall be imported into the United

7  States unless they are produced, labeled, and packaged".

8  **SEC. 3. ENFORCEMENT OF HEN HOUSING AND TREATMENT**

9         **STANDARDS.**

10    (a) IN GENERAL.—Section 8 of the Egg Products In-

11  spection Act (21 U.S.C. 1037) is amended—

12    (1) by redesignating subsections (c), (d), (e),

13    and (f) as subsections (d), (e), (f), and (g), respec-

14    tively;

15    (2) by inserting after subsection (b) the fol-

16    lowing new subsection:

17  "(c)(1) No person shall buy, sell, or transport, or

18  offer to buy or sell, or offer or receive for transportation,

19  in any business or commerce any eggs or egg products

20  derived from egg-laying hens housed or treated in violation

21  of any provision of section 7A.

22    "(2) No person shall buy, sell, or transport, or

23    offer to buy or sell, or offer or receive for transpor-

24    tation, in any business or commerce any eggs or egg

25    products derived from egg-laying hens unless the

17

1 container or package, including any immediate con-

2 tainer, of the eggs or egg products, beginning one

3 year after the date of enactment of the Egg Prod-

4 ucts Inspection Act Amendments of 2012, contains

5 adequate housing-related labeling.

6  "(3) No person shall buy, sell, or transport, or

7 offer to buy or sell, or offer or receive for transpor-

8 tation, in any business or commerce, in California,

9 any eggs or egg products derived from egg-laying

10 hens unless the egg-laying hens are—

11  "(A) provided—

12   "(i) beginning January 1, 2015, and

13   through December 31, 2020, a minimum

14   of 134 square inches of individual floor

15   space per brown hen and 116 square

16   inches of individual floor space per white

17   hen; and

18   "(ii) beginning January 1, 2021, a

19   minimum of 144 square inches of indi-

20   vidual floor space per brown hen and 124

21   square inches of individual floor space per

22   white hen; and

23  "(B) provided, beginning December 31,

24  2018, adequate environmental enrichments.";

25  and

18

1          (3) in subsection (e), as redesignated by para-

2    graph (1), by inserting "7A," after "section".

3     (b) LIMITATION ON AUTHORITY OF SECRETARY OF

4  HEALTH AND HUMAN SERVICES.—Section 13 of the Egg

5  Products Inspection Act of 1970 (21 U.S.C. 1042) is

6  amended by inserting "(with respect to violations other

7  than those related to requirements with respect to hous-

8  ing, treatment, and housing-related labeling) the" after

9  "Before any violation of this chapter is reported by the

10  Secretary of Agriculture or".

**11  SEC. 4. STATE AND LOCAL AUTHORITY.**

12     Section 23 of the Egg Products Inspection Act (21

13  U.S.C. 1052) is amended—

14     (a) by redesignating subsections (c) and (d) as sub-

15  sections (d) and (e), respectively;

16     (b) by inserting after subsection (b) the following new

17  subsection:

18     "(c) PROHIBITION AGAINST ADDITIONAL OR DIF-

19  FERENT REQUIREMENTS THAN FEDERAL REQUIRE-

20  MENTS RELATED TO MINIMUM SPACE ALLOTMENTS FOR

21  HOUSING EGG-LAYING HENS IN COMMERCIAL EGG PRO-

22  DUCTION.—Requirements within the scope of this chapter

23  with respect to minimum floor space allotments or enrich-

24  ments for egg-laying hens housed in commercial egg pro-

25  duction which are in addition to or different than those

19

1 made under this chapter may not be imposed by any State

2 or local jurisdiction. Otherwise the provisions of this chap-

3 ter shall not invalidate any law or other provisions of any

4 State or other jurisdiction in the absence of a conflict with

5 this chapter."; and

6     (c) by inserting after subsection (e), as redesignated

7 by subsection (a), the following new subsection:

8     "(f) ROLE OF CALIFORNIA DEPARTMENT OF FOOD

9 AND AGRICULTURE.—With respect to eggs produced,

10 shipped, handled, transported or received in California

11 prior to the date that is 18 years after the date of enact-

12 ment of the Egg Products Inspection Act Amendments of

13 2012, the Secretary shall delegate to the California De-

14 partment of Food and Agriculture the authority to enforce

15 sections 7A(a)(3), 7A(b)(3), 8(c)(3), and 11.".

16 **SEC. 5. EFFECTIVE DATE.**

17     This Act shall take effect upon enactment.

○

•HR 3798 IH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV12- 3130 JFW (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)         NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

William Cramer, an individual,

PLAINTIFF(S)

v.

Edmund G. Brown, Jr., in his official capacity as Governor of California; Kamala Harris, in her official capacity as Attorney General of California, DEFENDANT(S).

CASE NUMBER

CV 12 - 03130 JFW (JEMx)

SUMMONS

TO:  DEFENDANT(S): _____

A lawsuit has been filed against you.

Within 21_____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Bruce A. Wessel_____ , whose address is 1800 Avenue of the Stars, #900, Los Angeles, California 90067_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**TERRY NAFISI**

Clerk, U.S. District Court

Dated: APR 10 2012

By: _____
       Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS   (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| William Cramer, an individual, | Edmund G. Brown, Jr., in his official capacity as Governor of California; Kamala Harris, etc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Irell & Manella LLP<br>John C. Hueston (164921); Carlos R. Moreno (66912); Bruce A. Wessel (116734)<br>1800 Avenue of the Stars, #900<br>Los Angeles, California 90067<br>(310) 277-1010 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Declaratory Relief pursuant to 28 USC Section 2201

**VII. NATURE OF SUIT** (Place an X in one box only.)

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☒ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

**FOR OFFICE USE ONLY:**   Case Number: CV 12 - 03130 JFW

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CCD-JS44

APR 10 2012

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   [ ]  A.  Arise from the same or closely related transactions, happenings, or events; or

[ ]  B.  Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]  C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]  D.  Involve the same patent, trademark or copyright, __and__ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ]  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[X]  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved.

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _Bruce A. Wessel_    Date _April 10, 2012_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |